The next case this morning is 523-02-50. People v. Colbert. Arguing for the appellant is Deborah Pugh. Arguing for the appellee is Diane Campbell. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Again, thank you, counsel. Ms. Pugh, are you ready to proceed? I am. Then go right ahead. Okay, well, good morning, your honors and counsel. My name is Deborah Pugh, and I represent Ariana Colbert. A lot of things went wrong in Ariana's trial, and each of these errors exacerbated the other errors. But most of those errors are attributable, directly or indirectly, to trial counsel. The most glaring error was trial counsel's failure to initially seek the unreasonable self-defense instruction. Counsel only sought this instruction after the state recognized that that was actually the best instruction, and then she did a quick lunch hour scramble with no argument to finally request this. But as this court well knows, any time in which the court ended up denying, but as this court well knows, any time there's slight evidence of whether it's credible or not, whether it's corroborated or not, any time there's slight evidence of a lesser-included offense or lesser mitigated offense, the court has to provide it if it's requested. And here there was more than slight evidence. On the day of the shooting, Akari Ingram Treiner, the aggressor and victim, she was harassing Ariana all day, making various requests and demands. At night, she went over and was banging on the door, texted her that she was calling her brother. Then as Ariana gave her this cable box that she had come for, they're walking out, and the victim already has the cable box, and then she starts attacking Ariana for no reason. These are best friends, ostensibly. And so then Quincy, Ariana's boyfriend, comes down and tries to break it up. And then Quincy and Ariana try to go back in, and then Akari starts tumbling her, I mean really punching her and really attacking her. And so this attack is going on, and Ariana is just trying to retreat. It's an attack in her own home. She's trying to retreat. She's not able to. And while this is happening, the victim, Akari, is screaming deadly threats. She's screaming. Ariana testified that she was screaming, you're all dead. You're all dead. You're all dead. My brothers are coming. We're going to kick down your door, and you're all dead. And Ariana testified that she believed that that meant not just Ariana dying, not just Quincy dying, but also Quincy's young daughters who were asleep upstairs, which Akari, the victim, knew about. The court recognized that that's what Ariana said and even found it credible. The court said that the brothers coming and killing everyone was, quote, always a possibility for her. In Ariana's own words, whether the court found them whether they were corroborated, that's sufficient to require this instruction. But that's not all there was. Let me interrupt you, though. Didn't the court find that there was insufficient evidence to support granting the motion for the instructions as to unreasonable self-defense? Well, yes, but that's for a couple of different reasons. For one, the court actually said that it was always the possibility for her. But the court was weighing the evidence, which is really what should not be done. The court should be only looking for evidence in support of that. But that's the court actually weighed it, and you can read it in the court's decision making. It's like, well, sometimes Akari was the aggressor, but also sometimes Ariana was the aggressor. But this is factual weighing that is for the jury and not for the court. And then the court was also saying that there was no objective evidence of imminent harm. But that's the requirement for reasonable self-defense, which could lead to an acquittal. That's not what we're seeking here. We were seeking unreasonable self-defense because Ariana believed, reasonably or not, that she was in danger and that this was what she needed to do. And because the court or because the council didn't think about making this argument until after the close of evidence, after the state mentioned it, just during her lunch hour, she also didn't enter other information. So if this court finds that there really was no evidence that she did this unreasonably and that there's unreasonable self-defense instruction is required, despite the court saying that it's always a possibility for her, this court should consider finding counsel ineffective. Because as we know, in sentencing we see, and even before sentencing, pre-trial, we see that Ariana had been shot at recently. For some reason, counsel actively barred that testimony when in Croom or in this court's decision in Hampton. The knowledge that somebody had been shot at recently is something that shows that they have an elevated reaction, but greater response to fear. And so had counsel actually realized that this was the argument she should have been making, she would have entered along with other evidence that came up at sentencing that would show why Ariana might respond differently than other people. And so, but the state's reaction to this argument is also very telling. The state brings in a new case called Celis, which is an unpublished case. So having scanned all of the published cases, this is what the state found. But in that case, the defendant did get an unreasonable self-defense instruction and even got a reasonable self-defense instruction. And that's a case in which the defendant's friends had held him back, calmed him down, this melee was over, the fight was completely over, the victim was walking away, and the defendant broke free and stabbed him multiple times, killing him. In that case, the state relies on to say that unreasonable self-defense is not proper because there was no imminent danger. But in that case, the defendant did get precisely what we're asking here. And frankly, a lot more. There's just simply no argument. The case law is basically unanimous that in a case like this, where there's testimony from both the state and from the instruction, jumping ahead to involuntary manslaughter also. As this court knows, the difference between involuntary manslaughter and first-degree murder is that for first-degree murder, the defendant has to be consciously aware that her conduct is practically certain to cause death or great bodily harm. And slight evidence, again, is sufficient. This is what Ariana said at trial. I don't think I thought, I didn't. I reacted before I even had time to think. I reacted way too quickly without thinking. The state's witness, Ariana's former stepmother, also said that Ariana immediately after the shooting came and was hysterical, saying she didn't mean to do it. The trial court quoted page 507, quote, she just shot without thinking, which is to say she was not consciously aware. So the court actually found this in the record. The court actually found that she was not aware, but yet still denied the instruction. The court in denying it both weighed the evidence for and against, as he should not have done, because that's a matter for the jury. But he also misread the involuntary manslaughter statute and said that he thought that it had to be an accident or something like that. But an accident is not reckless. We're not saying that the gun accidentally went off. We're saying that Ariana acted without conscious awareness, which is what the court found. Now, this issue sort of dovetails directly into the second issue about the jury asking for a legal clarification of the word knowing. Because of course, knowing is precisely what differentiates first degree murder from involuntary manslaughter. The definition of would have been consciously aware, practically certain to result in death or great bodily harm. Now, the Illinois Supreme Court says, quote, there can be no trial strategy in allowing terms to go undefined when the jury is confused about something that is essential for their verdict. And in this case, that's precisely what counsel did. The state goes on and on about plain error, whether the trial court erred. That's not relevant. What happened here is counsel's fault. I mean, as the state says, it was invited error. Counsel asked for this. And so it was counsel's fault that the jury was not instructed. In spite of the fact that they were trying to figure out, they were trying to figure out whether there was some third option, a third option that they were denied because they only had the first degree murder instruction. The jury was trying to figure out what does it mean? What does knowing actually mean? Is it knowing for general knowledge versus discrete moment of time and action? If the court had just given, if the defense counsel had just asked for a knowing instruction, they would have gotten it. And it would have added some clarification that she had to be consciously aware of it. But counsel, what about this claim, though, that it would have further confused the jury? I mean, wouldn't that air that the counsel was just trying to be strategic in terms of her instruction? I think that it's really this case is really different from Jones, which is the Illinois Supreme Court case in which counsel made a somewhat different argument, but about saying that there was a reason, a strategic reason not to not to give the instruction. And it was a different instruction. There was the first part of the knowing instruction, which is actually not as vigorous as the second part. But counsel said they'd be confused. Counsel had nothing on the record to indicate that counsel just simply the state said, oh, no, it's no good. Counsel said, yeah, it's confusing and then didn't go on with it. And what there's no way in which this this instruction is confusing, even if that's what counsel believed. That's not not a legitimate belief when the when it's a very standard instruction and the case law is unanimous that it is required. I also want to briefly say that in Jones, the defense counsel was was specifically concerned that the jury might lead to that. It might lead the jury to a lower standard of proof or by needing fewer factors. But in this case, that wasn't the case. In this case, it was the second part of the knowing instruction, which involves being consciously where it's adding. It's making the jury understand that Ariana needed to be consciously aware that that's what she was doing in spite of her testimony, that she did it without thinking. Now, my time is up. So let me just say for Doyle, you're never going to find a stronger Doyle issue than the one in the third third argument. And I'll leave it at that. Well, thank you very much. Before we move to Justice McCaney or Justice Triller, do you have any questions at this time? Counsel, wasn't there a requirement that there would be an imminent need for deadly deadly force? Oh, no, not at all. That's that that's actually what distinguishes unreasonable self-defense from reasonable self-defense. If there had been an imminent need, then then counsel should have would have been asking for a reasonable self-defense instruction, which could have led to acquittal in for unreasonable self-defense. There's no need for that, in fact, because the whole point is that the defendant is wrong, that the defendant has a truly held belief about the danger, but the defendant is wrong. It's to recognize that people don't have to be perfect if they're faced with a situation like this. People, especially somebody like Ariana, who had recently been shot at, as the record shows, they react differently. And she's not required to be perfect when she's being attacked and threatened in her home and being threatened that that somebody might come and kill her and her stepdaughters and her partner. It's not that there's there was no requirement for there being imminent harm. And that's that is where the court erred here in looking for imminent harm when that's that's precisely what distinguishes it reasonable self-defense. All right, thank you. Well, thank you, counsel. Obviously, you'll have your time for rebuttal. Ms. Campbell, go right ahead. Good morning, your honors, counsel. Diane Campbell representing the people of the state of Illinois. I first want to address the unreasonable belief in self-defense and the argument that there's a lack of imminent harm. Unreasonable self-defense is still a self-defense. And one of the elements of self-defense is that the danger of harm be imminent. In this case, the trial court notes at 507 to 508 that the instruction is given if any evidence, however slight, if there's some evidence in the record, if believed by the jury would support the lesser charge and that it's not up to the judge to determine the credibility of the witnesses. In this case, the trial court then said at 508, the question I have now here today is where is the specific evidence for imperfect self-defense? There have to be some facts to support self-defense, however unreasonable objectively. So look at self-defense. Self-defense is unlawful force being threatened against her. That's at 508 and requires imminent danger of harm and that she subjectively believed a danger existed that required the use of force and her belief was unreasonable. That's all at 508. The defendant herself noted that the victim was walking away screaming. That's at 467 to 468. She says that there's only a possibility that the brothers might come back. That's at 463 to 464. The court notes that at 508. The court notes in the video the defendant is holding something, something fell. Defendant picked it up and fired. That's at 509. And the defendant also said in the video, you can tell the victim was walking away screaming. The court says that the facts are really nothing to support that there was going to be imminent harm to her. Certainly not imminent harm that could cause death or great bodily harm. That's at 508. It's included. Therefore, I can't that there's a good faith basis of facts, however slight to support the mitigating charge of second degree based on imperfect self-defense. That's at 509. Can I interrupt you there, counsel? Which case law, can you point to a case that gives the court some direction on eminent, the definition of eminent harm? Which cases would you rely on? I'm trying to remember. I think in part, the court was analyzing, and this was more in the context, I think, perhaps of the provocation if it's sudden. But certainly, imminent should not be considered if it's not the defendant herself who is threatening the harm here. She's threatening to go get the brothers, and the brothers are going to come back and present that deadly or great bodily harm threat. So the brothers have to come back at a later date. And the court recognized that that's only a future possibility. And that is a large part of why he found it wasn't him imminent. The brothers are not there. Ariana is threatening the harms to come from the brothers, not she herself. And the defendant shoots Akari. So if the brothers had come back or they were there, and Ariana shot the brothers, that's an entirely different scenario. But here, she shot a woman who was backing away while she was screaming threats. That's true. The brothers weren't there. The defendant shot the unarmed victim who is backing away. Again, it's not an equal combat situation. It's two against one while there was struggling and swinging. It was by both of the participants. It was actually the victim who got thrown to the ground. And after that, she is backing away. And she is shot by the defendant when she was backing away in a deliberate effort. And again, the defendant's flight afterwards and her throwing the gun in the lake is also evidence of her consciousness of guilt, which is her subjective feelings. If I can go on to the next issue or do you have more questions? No, I'm good. Thank you. For the serious provocation, again, the court made a special analysis for each particular instruction. And the court's permanent remarks on this are at 493 to 494. It talks about McDonald's, which has the five categories. And one is mutual world or combat. The court talks that it's not a sudden or intense passion, noting that the argument had lasted at least an hour. My opposing counsel said they'd been arguing all day. The court questions serious provocation. The defendant brought a gun to a fist fight. The victim was outnumbered two to one. The fight was not on equal terms. The defendant was going away. There were only verbal threats to come back later. And the brothers would hurt the defendant, not the victim herself. The brothers were not there. This is all at 493. The defendant herself was not sure if the brothers would come back. There was a possibility for a future event. And the defendant's comments are at 463 to 464. Trial court's comment is at 493. The court said, I can't find as a matter of law that the victim's actions really were serious provocation to the defendant. At the end, the victim was walking backwards. Defendant bends over, stands up and shoots the victim. At that moment, the victim was not provoking or doing anything really. So under the facts here, I do not believe there's sufficient evidence to submit to the jury, let alone have the jury find by the preponderance of the evidence for the mitigating factor. And that is at 494. The court also noted that everyone was responsible for the escalating. I will move on to the involuntary manslaughter instruction. My opposing counsel is right. It requires conscious awareness. And that is what the trial court considered here. At the jury instruction conference, the judge noted testimony that the defendant had to pull the gun's hammer back before she could shoot the gun. The trial court's comment is at 498. And that testimony was at 454 to 355. And it said, I don't find that there is any sufficient facts for a lesser charge. It notes that just some evidence whatsoever did not appear in this case. She held up the gun. The gun fell. She picked up the gun. She pointed and pulled it. And that's at 559. Here, the victim was the only person in the area. The shot was from 15 feet away. The victim was unarmed. She was backing up. And the defendant had to pull the hammer back to shoot. It was an action that required conscious awareness. She also shot the victim in the aorta and the trachea. And it hit her left lower lung. The testimony at 399 to 400 was that she would probably die within 10 to 20 seconds. So, it was a center body shot from 15 feet away. That is, in fact, a deadly action. And my opposing counsel said that the trial counsel was ineffective, first for not raising initially. She explained at the jury instruction conference that she considered the involuntary manslaughter and the provocation to the strongest defenses. So, she made a strategic choice to ask for those first. When the prosecutor mentioned the unreasonable belief of self-defense, counsel argued that it would apply, but she thought the other two were stronger. When the trial court refused those instructions, they then took a lunch break. She immediately came back after lunch and requested that unreasonable belief in self-defense instruction. So, she did act appropriately. She acted strategically. And she did then present, sorry, she did then present evidence. Defense counsel asked the defendant why she bought the gun and the defendant testified she was shot at, held at gunpoint, used to sing family, and one she loved victimized and nothing was done about. That's at 415. The defendant testified she bought the gun in June of 2021, and she generally kept it around her all the time. And that is at 415 to 417. So, defense counsel did, in fact, present evidence in that regard. In Taylor, which the defense counsel cites in her reply brief at 7, the court noted that the second part, the transferred intent, did not apply. In this case, that's 491. The reckless discussion went more towards the end of voluntary manslaughter. The court noted, in this case, that the provocation, the defendant did not pull a gun or a knife. The defendant and the victim both were swinging at each other. Where is the serious provocation? That's at 393. It's also two against one, and that everyone was responsible for the escalating and said, again, I can't find as a matter of law that the victim's actions really were serious provocation to the defendant. Counsel, I'm going to stop you there and then move on to rebuttal. Before we do, Justice Scholar or Justice McKinney, do you have any questions for Ms. Campbell? Counsel, you spent a substantial amount of your argument quoting the trial court. What about the trial court's quote, if I ever get reversed, it will be this case? Well, the judge also said that he had never been reversed. So, I think that indicates that it is, in fact, a well-reasoned trial judge. Simply, and that very fact, this is an abuse of discretion standard. That eliminates pretty much the abuse of discretion. He has exercised his discretion. He does have that. And obviously, he gave very careful consideration to this. Again, he said that I'm sorry. His quote also included that he had considered the defense counsel's argument and that arguably that, you know, that was the most sympathetic. But he is required to follow the law and the law does not indicate that the instruction should be given. I think that is a correct quote, but I can't remember what page that was at. All right. Thank you. Justice Scholar, any questions? No further questions. All right. Thank you, counsel. Ms. Pugh, go right ahead with your rebuttal. So, first, regarding unreasonable self-defense, with all due respect, opposing counsel is 100% wrong about the need for imminent harm. The second degree of murder in this case is not a lesser or some related to self-defense. It's a mitigating factor for first-degree murder. The instruction says that if at the time of the killing the defendant believes its circumstances exist, which would justify the deadly force, but that his belief in such circumstances is unreasonable, that means there was no imminent harm. To quote the Illinois Supreme Court in Whittier, it is the defendant's perception of danger, not the actual peril that is dispositive. In Lockett, the court also is stressing that it's the defendant's own subjective, incorrect belief in imminent harm. So I'm going to leave it at that. As far as whether or not it's strategic, if it were strategic, why would there be a lunch hour scramble to print it up? And also, if counsel is offering this evidence that that should be evidence of the need for unreasonable self-defense, why didn't counsel argue that at trial? Counsel made no argument whatsoever, and in fact basically argued against unreasonable self-defense. Further, counsel's argument is doing precisely what trial court did. It's weighing the evidence. It's saying it talks about what Akari did and it talks about what Ariana did, which is the victim and the defendant. That's not the point. The point is the court should be looking for evidence of unreasonable self-defense, not anything against it. Ariana was being attacked in her own home and Akari kept coming back. Akari had been attacking her. Now I'm going to move on quickly to provocation. I'm going to interrupt you for just a moment, but how do you square that position with people be cellists? Because doesn't people be cellists, isn't it analogous to the case that we have here? It is, and in people be cellists, the jury did get unreasonable self-defense instruction. That's why it's so puzzling that the state relies on that case for unreasonable self-defense, because in that case, the jury got both unreasonable self-defense and reasonable self-defense. It's a decent case for provocation, but not for those things. It perfectly supports Ariana's argument in terms of unreasonable self-defense. Now going on to provocation, whether it's a sudden attack or yes, they've been over the phone all day, but Ariana's best friend didn't actually attack her until a couple of moments before the shooting. She didn't bring a gun to a fist fight. Akari brought the fist fight to her and then Ariana didn't bring a gun anywhere. She was just carrying it. She was in her home and she was trying to protect her family. Now, whether or not Akari would have shot her at very moment, she didn't know. She didn't know what was happening and Akari didn't say that it was just her brother. She said, we're going to kick down your door and you will be dead. And while the counsel says that Ariana could have simply left, where is she going to go? She has to go upstairs, wake up two little girls, bring them to safety when she knows that Akari and her family live in the same apartment complex. Further, the court actively applied the wrong standard in finding this. The court said, let me find a quote very quickly. The court said, let's talk about, talking about the provocation instruction said, the court says, let's talk about the last section. It would have to be negligently or accidentally causes the death of an individual who was killed. And there's really nothing here, no testimony whatsoever that the defendant negligently or accidentally caused the death of the main victim. That's just a blatant misunderstanding of the law that applies only to transferred intent, which is not here. So simply based on that, on the court's misunderstanding of the law, it's an abuse of discretion. And then to go, and then as far as the manslaughter goes, talking about whether or not the gun was cocked. Sure. Yes. Like this is, we're not arguing that this was an accident. We're saying that she acted without having conscious awareness of what was going on. She was, she was woken up. She'd been pummeled by her best friend. Things were crazy. And she, and she pulled the trigger. Nobody was saying that she didn't as far as running away. Yes, of course she was terrified. She couldn't believe what she had done. She didn't mean to do it. And she knew that she just made the biggest mistake of her life by far. And so that, so the, the, the court was looking for an accident for, for manslaughter and that's not required in this argument. Counsel is perpetuating the exact same argument, the exact same errors the court made, weighing evidence and looking at the wrong standards for. So for all of those reasons, we ask that the conviction be overturned and also that this court consider all three of these arguments, not just the ones that we've talked about today. Well, thank you counsel. Excuse me. So before we close justice McKinney or justice Schoeller, do you have any final questions? No further, no questions. Well, thank you counsel. Obviously we'll take the matter under advisement. We will issue an order in due course.